Oral argument not to exceed 15 minutes per side. Mr. Barbieri for the appellant. Good morning, your honors. My name is Larry Barbieri. I represent the village of Evendale. And I'd like to request five minutes for rebuttal. We're dealing here with a statute that the village of Evendale passed for the health, safety, and welfare of the residents of the village of Evendale. And then amended after the district court made its decision saying that because there wasn't an explicit warrant provision in the first ordinance and it just said that the code enforcer will have those remedies provided by law, he wasn't prepared to say it was constitutional, although he didn't specifically say it was unconstitutional, but he did grant the injunction. I'm just trying to figure out why do you continue to say that the ordinance permitted warrantless searches, assuming there are no exigent circumstances, when the language says, as provided by law, you can't have a warrantless search. And they never did a warrantless search. Our position from the beginning, your honor, on behalf of the village of Evendale, was that that original ordinance was constitutional because it only provided for the remedies provided by law and a warrantless search isn't provided by law. There never was a warrantless search and, in fact, Mr. Lehman actually signed the waiver and so he received his permit without the search. But the court said that, well, that's not good enough because it doesn't say you have to have a warrant. So the village of Evendale then went back to the drawing board and revised and amended the ordinance and now it says you can only enter with a warrant based upon probable cause or in emergency circumstances. And the case law is, your honor, that when we're up in the Court of Appeals, it's the amendment to the statute that the court should consider. That's the Kentucky Right to Life case as well as the Bench Billboard v. Cincinnati case. So both of those cases discuss the fact that when an ordinance is amended after a ruling on an injunction, the Court of Appeals should look at the new ordinance. And the new ordinance specifically says that the property owner has the right to refuse consent to enter. Then it says if he does that, then the code enforcer, the building inspector, has the right to go and ask the person who's living there if he can enter or he can get a warrant and enter with probable cause and then he can enter on the warrant or he can enter in emergency circumstances. What's your take on the standing point given both the original language, which didn't seem to contemplate constitutional violations, and the reality there hadn't been any warrantless searches? Why is this a live dispute? Why isn't this just a request for an advisory opinion? I believe it is a request for an advisory opinion. I don't think the plaintiff does have standing, your honor. In fact, I think it's clearer under the amended statute than it was under the original ordinance. Because under the amended ordinance, not only is there an explicit warrant provision, and there has never been an entry without a warrant, and as I said, Mr. Lehman actually got his permit on a waiver. But the property owner has a right to avoid an inspection entirely simply by submitting an affidavit that his property complies. And both of these people testified, both the plaintiffs testified at the hearing that their property complied with the ordinance. Was there any evidence of threats of searches without consent? No. Without a warrant. In other words, if you continue to do that, you can expect a search. Is there any evidence along those lines? No. On the contrary, the building code enforcer testified that he was a building inspector for the city of Cincinnati for many years, and he knew he couldn't go into anybody's property without a warrant. And that he had gotten administrative warrants many times. It seems like the lack of standing problem is your best solution. You've got a new law that makes it crystal clear that whatever the complaint was before is gone, and there wasn't standing for the original case. And standing was the first argument I was going to make, and I agree with you completely. I think that there is no standing. I think that for there to be standing, first, this is a facial challenge. So the plaintiff has to prove that there are no circumstances under which the ordinance will be constitutional. Plaintiff bears the burden of proving standing, and in order to prove standing, he must prove that the injury is concrete, particularized, and actual or imminent. And here, at most, the injury is speculative. There's never been anyone who threatened to inspect any of these properties. There has never been an inspection of these properties without a warrant. The ordinance itself says a code enforcer can only go into their property with a warrant based upon probable cause or in emergency circumstances. So if we're talking about a pre-enforcement injunction, we're talking about something where the injury in the future must be certain to occur, and here, at most, it's remote or speculative. And if you look at the Susan B. Anthony case and the Clapper case, both of them stand for the proposition that the plaintiff has no standing here. And I think that that is a strong argument on behalf of the village of Evendale, and I think the mootness is as well. But I think standing, since Article III standing is a subject matter jurisdiction issue that the court will raise on its own, I think standing is something that has to be looked at first. It's to make sure that the court doesn't usurp the power of the legislature, and this is certainly an advisory opinion because there's nothing under the current statute. A warrantless search will not occur. The fact that that could possibly occur is very remote and speculative. And I think based upon the Supreme Court law and Susan B. Anthony and Clapper, this case should be dismissed for lack of standing. One of the difficulties of being on the Court of Appeals as opposed to the District Court is we don't really see what was going on. It just smacks us that there's something we're missing here as to why this lawsuit was filed. I'm not asking you to go way out of the record, but is there some longstanding animosity between one of these plaintiffs and the village, or are they mad about something? What's going on here? Mr. Vonderhaar worked for 48 years. I think for 48 years he's been involved with the village of Evendale, first as a police officer. I think he was on council, and I think he owns 13 properties, all of which are leased out in the village of Evendale. And when this ordinance was initially being contemplated, they had a number of council meetings where they discussed it. And Mr. Vonderhaar got up and spoke at these meetings and said it's going to be unconstitutional. There are cases out there that say these ordinances are unconstitutional. And I think he thought that it was aimed at him. I'm speculating a little bit there. He didn't testify to that, but he did testify to the other things that I mentioned. And I believe that that's why this suit was filed. And he did receive some citations. He received citations for not applying for the permit and citations for not having the permit. They argue under the statute that the citations were premature, but there was never a threatened inspection without a warrant. That never happened. But I think that the suit was probably a result of that. I think the next argument, Your Honor, on behalf of the village of Evendale is that this is a moot situation. Just to make sure I'm getting something, let's say you're right about standing on the Fourth Amendment. And in the normal rule, if there's a lack of Article III jurisdiction and that was a problem at the district court, the normal remedy would be to vacate the district court decision on the Fourth Amendment. Does that take care of this case or what's left? I think that does take care of that case since the ordinance has been amended. Now, the case won't be dismissed in its entirety because there is also a claim against the building code enforcer and the administrator. There are claims against them individually that this case will not conclude. You're making the point that's not part of the preliminary injunction, so that just goes back? Right. That gets resolved in its own time? Right. And that, in fact, has been ongoing. The plaintiffs just filed a motion to amend their complaint in the underlying case. But as far as the preliminary injunction goes, yes, this ordinance has been changed. This ordinance now clearly complies. We thought it complied before with constitutional requirements, but now we don't think there's any question about that. So there's no standing here. So as far as the constitutional claim on the Fourth Amendment, I think that should be out of the case completely. So if the ordinance is constitutional, then what's the basis of the claims against the individuals? Well, I think they have to do with the citations, and I think they're claiming that the citations were retaliatory for filing this complaint and things of that nature. It has nothing to do with the inspections. Obviously, we will argue that under 1983 jurisprudence, giving a citation is not a seizure for purposes of malicious prosecution or something of that nature. But that's what those claims are generally going toward. So as far as mootness is concerned, I think that the Kentucky right to life and bench billboard case are right on point. And they say legislative repeal or amendment of a challenge statute, while a case is pending on appeal, usually eliminates the requisite case or controversy because a statute must be analyzed by the court in its present form. And the only time that the mootness would not apply is if there's been some statement that's made by the village of Evendale that, well, if this injunction is reversed, then, in fact, we're going to reinstate the original statute. And that hasn't happened. So there's no. Thank you. All right. Thank you very much. Thank you. Good morning, Your Honors. May it please the court, my name is Brian Redden. I am counsel for the Plaintiff Appellees in this matter. Mr. Lehman, Mr. Vonderhaar, as well as their limited liability companies that are the plaintiffs in this matter. Your Honors, the Evendale Rental Registration Code that was in effect in September of 2017 and the amended version that was passed in February 2018, both failed to satisfy Supreme Court controlling guidance from Camara. Let's talk about the standing. Certainly. I have an initial question whether there was jurisdiction at all. What are your thoughts? Understood. What was just said. And Judge Sutton, thank you for raising that question. The court asked by letter brief several weeks ago on this issue. And, frankly, we strongly feel that our clients satisfy the standard that is laid out in the Susan B. Anthony case, that they need not expose themselves to prosecution to challenge what is clearly an unconstitutional statute, as the Supreme Court explained. Right, but you have to show that there's more than, you know, has to be more than a speculative risk that there's going to be an unconstitutional search. And you have the language of the statute, which Judge McKeague referred to. You have, as I understand it, a record in which there's been no warrantless searches. And you have a record in which there's no threat of warrantless searches. And then, to the contrary, just to be clear, they decide to amend it just to make what they thought was already clear doubly clear. And I assume you agree right now it's constitutional with the amendment, right? Well, Your Honor, we do not agree that at this point that they have satisfied the Supreme Court guidance of Camara and C v. Seattle when it comes to the language of the statute. And I will get there. And I understand this court's concern that you and Judge McKeague have both raised with respect to the standing issue. So let me go to that issue. As Mr. Barbier mentioned, there are three clear elements that have to be satisfied in order for there to be a live case or controversy under Article 3, which is the first, the injury in fact issue, the threat or a concrete or particular risk to a violation of a protected interest and some actual or imminent harm there. Where I think the village is clearly wrong with respect to this is there was a very real, clear, and present danger when it came to the Fourth Amendment rights and the Fifth Amendment rights of our clients that Judge Barrett recognized in the record of the case. I would point the court to the exhibits 4, 5 and. Are you focusing on the Fourth Amendment here? Tell me. Well, the folk. Yes, Your Honor. At this point, the focus is on the Fourth Amendment issues because that is the issue of the decision. Exactly. And Judge Barrett did not deal with the Fifth Amendment issues. But if you look at exhibits 4, 5 and 6 that were part of the record, that every witness that testified in front of Judge Barrett in the September 2017 hearing testified about and related to demonstrated that those were there. What's in the exhibit? Exhibit 4 were the 12 letters that Mr. Vonderhaar received in June 2017, notifying him of his requirement that he register with the village of Evendale, his rental properties that were in the village. What's the language in there that constitutes the threat they're going to do an unconstitutional search? Part one is if you don't register, you are required to obtain a rental registration permit within 14 days of the date of the notice. And it cites to Section 1468 of the property maintenance code. OK, so that doesn't make any reference to a search. So what that does, that does not tell us something in there that relates. Specifically, the language and the problem is the language of the forms that the village used differed from the language of the ordinance itself. However, if you look at exhibit 6, which was Blue Park Place LLC, which is one of the plaintiffs, it's Mr. Lehman's LLC. He certified that he understood his property is subject to exterior inspection prior to issuance of the rental permit. So there was a limited search that was done by the village prior to issuance of the permit. But that he also understood that the property could be subject to interior inspection and that it could be re-inspected prior to any change of occupancy. Why does that show it would be without a warrant or lack of compliance with the Fourth Amendment? I mean, you're building so much suspense up. Just tell us the key language. We're looking for the thing that really has something to do with the search. Yeah. The key language is the original ordinance from September of 2017. Anything in the documents you were pointing us to that says the property will be searched or could be searched? That's simple. Those particular three documents, none of those specifically say that the property... That was the best stuff. So what other document might you... It's the testimony from Mr. Mercer, the building commissioner, Mr. Elmer, who was the village administrator, both of whom... So you're saying that an ordinance can be unconstitutional because somebody thinks it is, even if they have no basis for that? That can't be the law. No, no. It's the language of the ordinance itself that determines whether or not it gives reasonable notice to individuals that the property that they have could be subject to a search, and under what circumstances and what conditions it could be subject to a search. The ordinance itself referred to, this is not the precise link, but to existing law. I mean, the village didn't say anything in the ordinance that suggested it was going to act outside the requirements of the law, as far as I can tell. That's what your client thought, but I'm not finding anything in the record that supports that thought. The original ordinance itself, which was... What was that issue in front of Judge Barrett, which is Exhibit 1, which is 1468... When we get into the search, 1468.13 says, where it is necessary to make an inspection to enforce provisions of the code, or whenever the building commissioner has reasonable cause to believe there exists in a structure, or upon a premises, a violation of the code, the building commissioner is authorized to enter the structure at reasonable times to inspect or perform the duties imposed by the code. That's 1468C. What are you reading? It's 1468C. Are you reading from something Judge Barrett said? Exhibit 1. Exhibit 1, which is the September 27th code that was in front of Judge Barrett. What is Exhibit 1? It's the code? It is the code from September 27th. Okay, so where is that language that I referred to come from? It's in there, isn't it? But this is just, this is the same code that says the remedy is provided by law to secure entry. It is. So why aren't you reading that part? Well, that's what necessarily leads to the next, because then it says, if the property owner refuses to allow the consensual search for the building commissioner to then come in, then the building commissioner has recourse to the remedies provided by law. So everything you first read dealt with a consensual search. There's nothing unconstitutional about that. Then if the owner refuses, then you can only proceed as provided by law. Right. How can that be unconstitutional? Because the all remedies provided at law do not, that phrase does not empower the building commissioner to do anything. That's where we get into the Camara and C issues. Yeah, that's the whole point. We agree. The building commissioner is recognizing the limitations on his authority to search by referencing the law. If the law requires it, he's going to have to go get a search warrant. Well, that's exactly, and Mr. Mercer apparently testified that he understood that. But Judge Barrett was correct, based on controlling precedent from the Supreme Court, virtually every circuit, virtually every state that has addressed this issue, that you cannot simply rely on the goodwill of one individual who may have experience. Mr. Mercer could retire tomorrow. He could pass away tomorrow. There could be a new individual who doesn't understand what the requirements of the law are. The basic thing is that every ordinance then would have to say that you would have to spell out what as provided by law means, and it would have to expressly say you have to go get a warrant. Absolutely. Now, is there a case that says that you have to use those words as opposed to as provided by law, which seems to fully subsume those words? Certainly it does. The Camara case says very specifically, administrative searches are significant intrusions into Fourth Amendment interests, and when those are conducted without a warrant process and procedure, they lack sufficient Fourth Amendment protections. What Camara requires, what C requires, what virtually every circuit requires, is that you have to have an affirmative empowerment and regulation of the building commissioner. We don't have that here. You have to have a standard for the judicial or adjudicative officer to decide whether a warrant could issue. We don't have that here. You have to have a clear notice and due process and a procedure available to owners and tenants to Does Camara indicate that that has to be in your ordinance? It's not, I mean Yes, it does. I think it does. I think you're just reading the Fourth Amendment standards mentioned in Camara. Well, but that's what Camara requires. Anything less is a threat to the property interest of the owner and the tenant. If the building commissioner, whomever it might be, doesn't understand compliance with the Fourth Amendment, then that might be problematic. But that can't possibly be an injury in fact today. Well, the real threat to Mr. Vonderhaar, to Mr. Lehman, which the threat became very real when Mr. Vonderhaar was prosecuted simply because he objected to what he perceived were the problems with these issues, as he had done before the statute was passed, I'm sorry, the ordinance was passed after it was passed. He was prosecuted. I thought he was issued a citation. Well, he was issued 12 misdemeanor citations. The ordinance itself allowed those to be assessed at $150 per day for every day of the violation. At the time of the September hearing, those fines would have been added. None of those citations grew out of an unconstitutional search. Correct. There was no search of Mr. Vonderhaar's properties at the time that the suit was commenced. There was an exterior search of Mr. Lehman's property by the time the suit had been commenced. Well, then what was the basis for the Vonderhaar citations? That at the date that he had not registered his properties pursuant to the rental registration code. That was the basis of the citation. He had commenced that process on July 12th by picking up the packets for his properties. Those, as you can see in the documents, and this was Exhibit 5 in front of Judge Barrett in the record. Does he contest factually that he hadn't completed? No, but Exhibit 5 said you have 30 days to complete your packets. He had until August 13th to complete and submit those documents to the village. He was cited on July 14th, so rather than giving him 30 days as they said they were going to give him, they actually gave him two days before they cited him for a failure to register. If he's still missing, what's this got to do with the Fourth Amendment? The tie to the Fourth Amendment is the day that he actually was cited was the day that he asserted his rights by filing the complaint with the federal court saying, wait a minute, this whole regulatory scheme under which in order for me to register, I have to give up the rights for the building commission. Do you believe that the filing of his lawsuit was communicated to the individual immediately who issued the citation so the individual could run out and issue a citation to your client? Judge Gibbons, that's part and parcel of what we're engaging in discovery on now. I cannot tell you whether that happened or did not. Did you have a basis for filing the complaint other than the proximity in terms of time? Did you have any other facts that supported your complaint? Oh, absolutely. I mean, this was a- As to the knowledge of the individual who issued the citations? There is some discovery in the record by way of deposition that- I was asking you about the time you filed the complaint. Yes. The answer to that question is yes. We do have a belief that the building commissioner was aware when he issued this. I didn't ask you for your belief. I asked you for your facts. Okay. And my belief is the testimony from Mr. Mercer is at the time that he issued those, there was awareness that a lawsuit had been filed by Mr. Vonderhaar as a party. So coming back to- I'll continue to address the Article III issues with the last minute here. We do believe that in the record there is a clear causal connection between the injury and the complaint of conduct. That is that our clients have been required to compromise not only their Fourth but their Fifth Amendment rights, either in making the election to comply with the code or to contest those rights. Clearly, their issues with respect to the Fourth and Fifth Amendment issues are redressable. They were redressable by Judge Barrett through the issuance of the injunction, and they are redressable here by this court affirming the proper injunction that was issued through Judge Barrett's court. And we would ask that the court affirm Judge Barrett's determination. If there's no further questions. All right. Mr. Barbier. Thank you. Thank you, Your Honors. Just to give a little bit of an idea of the timeline, the hearing on the preliminary injunction was September 27th of 2017. The court issued its decision on January 19th, 2018. All of the citations were dismissed on February 7th, 2018, and on February 13th, 2018, the ordinance was amended to add a specific requirement that there be a warrant based upon probable cause. The cases cited by Mr. Reddin, they did not say that the language which was in the original ordinance was unconstitutional. They didn't deal with ordinances that said that if consent is refused, the building commissioner can act in accordance with the law or worse to that effect. They just didn't say, they just said you're going to have to submit to an inspection. That's why they were struck down. No ordinance with language similar to the first Evendell ordinance was struck down, but now the ordinance goes well beyond. It gives them all these other alternatives that they can do other than an inspection, and it makes it explicitly clear that there has to be a warrant based upon probable cause to do an inspection. And then finally, the- I don't have Camara in front of me, but what Mr. Reddin argues is that Camara specifically says the ordinance has to then spell out what the standards are to get an administrative warrant. You don't really address that head on in your reply brief, so what is your response to what he thinks Camara stands for today? Camara, as I read Camara, it said that you had to get- you could only enter upon probable cause with a warrant. It did not say that you had to put in your ordinance that there had to be reasonable suspicion or whatever. We did put in our ordinance that we had to have probable cause, and there are other cases that say that's good enough. The Markavich case, we actually- the Markavich case is a Third Circuit case that said their ordinance was constitutional with respect to the Fourth Amendment, and we copied their language. And we do say it has to be a warrant based upon probable cause in the amended ordinance, but Camara didn't say that language- if you said you had to act in accordance with the law was insufficient. That's just the plaintiff's argument, but- What time did you copy the Third Circuit language? When we did the amended ordinance. Second time. After- Right. What the judge said is he couldn't say that it was unconstitutional or constitutional, but the ordinances that had been upheld had an explicit warrant provision in them, so therefore he was going to grant a preliminary injunction. So Markavich was a case that was argued by both parties. We argued that Markavich stood for the original ordinance being constitutional. Plaintiff argued that it stood for the original ordinance being unconstitutional because it had an explicit warrant provision in it. So after the court- and the court cited Markavich, so after that, the Bilge of Evendale copied their ordinance and added the Ohio engineer getting a certification from an engineer or an architect and added the explicit warrant provision based upon probable cause and copied it right out of the Markavich case. That has been held constitutional by the Third Circuit. The only other argument I would make, Your Honors, is that there was a mention made of an exterior search and the only exterior search testified, and it was testified to by Donald Mercer, he said he made that from the public right-of-way. He didn't go on to anybody's property to do his exterior searches. He only did that from the public right-of-way. It's the Bilge of Evendale's position, strongly, Your Honors, that there is no standing here, that this case is moot insofar as the Fourth Amendment claim is concerned, and we would ask that you reverse the judge's preliminary injunction amendment or, I guess, dismiss the case because there's no standing. Thank you very much. We appreciate the argument both have given, and we'll consider the case carefully. Thank you.